UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MOON ENGINEERING COMPANY;
LIBERTY MUTUAL INSURANCE
COMPANY,
Petitioners,

v.

No. 96-2581

DANIEL E. BAUM; DIRECTOR, OFFICE
OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
Respondents.

On Petition for Review of an Order
of the Benefits Review Board.
(No. 94-719)

Submitted: March 17, 1998

Decided: April 3, 1998

Before LUTTIG, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Jimese L. Pendergraft, KNIGHT, DUDLEY, CLARKE & DOLPH,
P.L.C., Norfolk, Virginia, for Petitioners. Ralph Rabinowitz, RABI-
NOWITZ, RAFAL, SWARTZ, TALIAFERRO & GILBERT, P.C.,
Norfolk, Virginia, for Respondents.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Petitioners Moon Engineering Company and Liberty Mutual Insurance Company seek review of an order of the Department of Labor's Benefits Review Board ("the Board"). The Board summarily affirmed the decision of the administrative law judge ("ALJ") to grant Daniel E. Baum's claim under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901-950 (West 1986 & Supp. 1997) ("the Act"), for permanent total disability benefits and to deny Petitioners' request for modification of the award. **1** Because substantial evidence supports the findings of the ALJ in awarding permanent total disability benefits and because we find no abuse of discretion in denying the request for modification, we affirm.

A claimant seeking disability benefits under the Act must establish his inability to return to his former employment. **2** Baum worked as a lead-man machinist for Moon Engineering, supervising a crew of nineteen workers.**3** On March 30, 1987, Baum sustained a work-

_____

**1** The Board never addressed the merits of the appeal. On September 12, 1996, the Board sent the parties a notice stating that pursuant to the provisions of Public Law Number 104-134, enacted on April 26, 1996, all appeals to the Board relating to claims under the Act were deemed to have been affirmed if the case had been pending before the Board for one year by September 12, 1996. Because the Petitioners' appeal met these criteria, the Board informed the parties that the ALJ's decision had been effectively affirmed by the Board on September 12, 1996, for purposes of their rights to obtain review in this court.
**2** **See See v. Washington Metro. Area Transit Auth.**, 36 F.3d 375, 380 (4th Cir. 1994).
**3** With a tenth-grade education, Baum began his employment with Moon Engineering as a laborer earning $3.00 per hour; at the time of his injury, as a lead-man machinist, he earned an average weekly wage of $910.32.

2

related back injury when he fell from a ladder and hit a steel beam. After returning to work, Baum re-injured his back in September 1987. Baum then sought and received temporary total disability benefits, which Petitioners have paid since October 13, 1988. In September 1990, Baum filed a claim for permanent total disability benefits.

Dr. Byrd, Baum's treating orthopedic surgeon, operated on Baum's lower back in early 1988, but Baum failed to improve following the surgery. Due to his complaints of pain, rehabilitative attempts were unsuccessful. Baum then participated in a pain management program with little success and began a physician-authorized exercise program that involved swimming twice a day. Baum later sought employment from twenty-five to forty employers but received only two job offers, both with duties beyond his medical and physical limitations.

Dr. Schinco, a neurosurgeon, examined Baum on behalf of Moon Engineering and noted that although Baum complained of numbness without paresthesia in the left lower extremity, such complaints might be magnified "due to secondary gain and emotional factors." Dr. Schinco recommended that a functional capacity evaluation be performed. Confirming the conclusions of the evaluation, Dr. Schinco agreed that Baum should be able to return to his "physical activities with restrictions on lifting no more than [twenty-five] pounds and no repetitive bending." However, Dr. Schinco did not articulate the number of hours per day that Baum could sit, stand, walk, or lift without excessive or even tolerable pain.

Following Dr. Schinco's recommendations, Petitioners commissioned the services of Susan Castle, a qualified vocational rehabilitation specialist, to perform a labor market study. Castle reviewed a copy of Dr. Schinco's report and the results of the functional capacity evaluation. She did not, however, review the reports from Baum's treating physician or speak with Baum himself. Castle's research revealed several jobs for which Baum could qualify based on the physical restrictions known to her.

On April 26, 1993, the ALJ held a hearing on the matter and determined that the functional capacity evaluation, which was not performed by a physician, made no assessment regarding the length of time Baum could sit, or stand, or perform other functions. The ALJ

3

also found that the labor market study was based on the unsupported premise that Baum could perform sedentary work on a full-time basis. The ALJ further determined that Baum could not engage in full-time employment at any level of exertion or successfully maintain part-time employment for twenty hours per week. Based on these limitations, the ALJ concluded that Baum was prevented from returning to his former employment and from obtaining any other employment. Accordingly, the ALJ granted Baum's claim for permanent total disability benefits.

In May 1994, five months after the ALJ entered its Decision and Order, Petitioners sought modification of the final compensation order. Petitioners contended that after the hearing before the ALJ, they discovered that they possessed a functional capacity evaluation that Dr. Byrd conducted in May 1992. In this evaluation, Dr. Byrd concluded Baum could return to light-duty work for eight hours a day with certain lifting and carrying restrictions. In support of their request for modification, Petitioners also submitted an April 1994 opinion by Dr. Byrd reaffirming that Baum could return to work with certain restrictions. Dr. Byrd came to this conclusion after reviewing a February 1994 videotape of Baum engaging in various physical activities.[4] Because the May 1992 report was in Petitioners' possession at the time of the hearing, the ALJ found that the Petitioners were not entitled to any relief.

Section 21 of the Act, in pertinent part, sets forth the applicable standard of review:

> The Board shall be authorized to hear and determine appeals raising a substantial question of law or fact . . . . The findings of fact in the decision under review by the Board shall

_____

[4] A man whom Petitioners have identified as Baum was videotaped leaving his home, getting into a van, and driving away. The man is later seen opening the hood of the van, bending over the engine to change the oil and bending over to the ground. Dr. Byrd noted that the man performed these activities without the aid of a cane or lumbar brace and that these activities were consistent with the results of the May 1992 evaluation.

be conclusive if supported by substantial evidence in the
record considered as a whole.**5**

Accordingly, we will reverse the Board only when there is an error
of law or when a finding of fact is not supported by substantial evidence.**6**
Substantial evidence is "such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion."**7**

In order to uphold a finding of permanent disability, "there must be
substantial evidence that the condition alleged to be disabling has
reached maximum medical improvement."**8**

Here, the record supports the ALJ's conclusion that Baum was per-
manently disabled because the parties stipulated that Baum reached
maximum medical improvement on September 14, 1990, and that he
was no longer able to return to his former work. **9**

The determination of whether a claimant is either partially or
totally disabled involves a shifting burden of proof scheme. A claim-
ant must first establish that he is incapable of returning to his prior
employment. Then the burden shifts to the employer to prove that the
claimant is not totally disabled by presenting evidence of other jobs
that are available in the relevant geographic market for which the
claimant is physically and educationally qualified. **10**

_____

**5** 33 U.S.C. § 921(b)(3) (1994).
**6 See John T. Clark & Son, Inc. v. Benefits Review Bd.**, 621 F.2d 93,
95 n.3 (4th Cir. 1980) (citing O'Leary v. Brown-Pacific-Maxon, Inc., 340
U.S. 504, 508 (1951)).

**7 Richardson v. Perales**, 402 U.S. 389, 401 (1971).
**8 Universal Maritime Corp. v. Moore**, 126 F.3d 256, 263 (4th Cir.
1997).
**9** Earlier, in May 1990, Dr. Byrd had opined that Baum could perform
light-duty work; however, based on Baum's increasing complaints of
pain, Dr. Byrd amended his opinion to reflect that Baum was perma-
nently disabled.

**10 See Newport News Shipbuilding & Dry Dock Co. v. Tann**, 841 F.2d
540, 542 (4th Cir. 1988).

5

The ALJ discredited Petitioners' evidence of the availability of alternate employment because the functional capacity evaluation upon which Ms. Castle relied in conducting the labor market study was not performed by a physician and did not contain any assessment of the number of hours per day that Baum could perform such basic functions as sitting, standing, walking, or lifting. While Ms. Castle had access to Dr. Schinco's report, his report did not contain this necessary information either. Therefore, we find that the ALJ's determination of total disability is supported by substantial evidence contained in the record.

Petitioners also appeal the ALJ's denial of their request for modification of the final compensation order awarding permanent total disability benefits, which was based solely on the rationale that such relief was not intended to benefit a party that withheld evidence. They assert that the ALJ made a factual mistake by determining that Baum was permanently and totally disabled because that determination was made without the benefit of the May 1992 report from Baum's physician that concluded he could return to light-duty work. Petitioners also assert that their request for modification was erroneously denied because the ALJ did not consider the new evidence of change in Baum's physical condition.

Modification of final compensation orders is permitted upon a showing of a change in the claimant's condition or a mistake in a determination of fact by the ALJ.[11] The ALJ accordingly is vested "with broad discretion to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on evidence initially submitted."[12] A party is not entitled to a modification as a matter of right; rather, a compensation award should be reopened only when a reexamination of the award would serve the interests of justice.[13] A bare claim of need to reopen to serve the interests of justice is not enough; a court must balance the

_____

[11] **See** 33 U.S.C. § 922 (1994).
[12] **O'Keefe v. Aerojet-General Shipyards, Inc.**, 404 U.S. 254, 256 (1971); see Eifler v. Peabody Coal Co., 926 F.2d 663, 667 (7th Cir. 1991) (recognizing that ALJ may correct his own factual errors even though the Act does not specifically refer to ALJ).
[13] **See O'Keefe**, 404 U.S. at 255-56.

6

need to render justice against the need for finality in decision making.**14** We review modification decisions for abuse of discretion.**15**

Petitioners presented evidence in support of their application for modification that in May 1992, Baum's treating physician was of the view that Baum could return to light-duty work with certain restrictions. Petitioners also submitted the physician's reaffirmation of that opinion after he watched a videotape of Baum engaging in various physical activities.

We find no abuse of discretion in the ALJ's denial of modification of the disability award. Petitions for modification are "designed to prevent injustice resulting from erroneous fact-finding officials such as an ALJ, not to save litigants from the consequences of their counsel's mistakes."**16** Though they had access to the May 1992 report, Petitioners did not submit it to the ALJ at the April 1993 hearing. As for the 1994 report, we find Petitioners have failed to demonstrate how modification on that basis would serve the interests of justice. Finding no abuse of discretion, we affirm the ALJ's denial of Petitioners' request for modification.

We conclude that the ALJ's determination that Baum was entitled to permanent total disability benefits and his denial of Petitioners' request for modification are proper and supported by substantial evidence. Accordingly, we affirm the ALJ's orders. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

_____

**14 See General Dynamics Corp. v. Director, Office of Workers' Compensation Programs**, 673 F.2d 23, 25 (1st Cir. 1982).
**15 See O'Keefe**, 404 U.S. at 256.
**16 Verderane v. Director, Office of Workers' Compensation Programs**, 772 F.2d 775, 780 (11th Cir. 1985).

7